**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA, ) ) Respondent, ) ) v. ) ) CHRISTOPHER JONES, ) ) Petitioner. ) | Case No. 07 CR 432 Hon. George W. Lindberg |

**MEMORANDUM OPINION AND ORDER**

Before the Court is petitioner Christopher Jones' ("Jones") motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or correct his sentence in the underlying criminal proceeding, *United States v. Jones*, 05 CR 45 ("§ 2255 petition"). Jones requested and was granted an evidentiary hearing on his § 2255 petition. For the reasons set forth more fully below, the § 2255 petition is granted in part and denied in part.

*I. Relevant Facts*

On October 12, 2005, Jones entered a blind plea of guilty to a six count superseding indictment that included the following charges: one count of possessing with intent to distribute cocaine base in the form of crack cocaine in violation of 21 U.S.C. § 841(a)(1) (Count I); one count of using and carrying a firearm in furtherance of the drug offense charged in Count I, in violation of 18 U.S.C. § 924(c) (Count II); one count of being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1) (Count III); one count of being a felon in possession of eight firearms, in violation of 18 U.S.C. § 922(g)(1) (Count IV); one count of possessing a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k) (Count V); and one count of

possessing cocaine base in the form of crack cocaine, in violation of 18 U.S.C. § 844 (Count VI).

Counts I, II and III stem from an incident that occurred on the evening of October 24, 2004 in an alley and adjacent vacant lot near the intersection of Cermak and Keeler on the west side of Chicago. Jones and the government agree that sometime after 7:30 p.m. on October 24, 2004, three Chicago police officers approached Jones in the alley or adjacent vacant lot near Cermak and Keeler. The police recovered baggies of crack cocaine, placed Jones under arrest, searched him, and found a gun in the right side waistband of Jones' pants.

### A. Suppression Hearing

At a suppression hearing before Magistrate Judge Levin on June 17, 2005, Jones and the government disputed the facts leading to Jones' arrest and the sequence of events just prior to his arrest. According to Jones, at around 7:30 p.m. on October 24, 2004, he received a telephone call from a "white guy" named Dan who wanted to buy two baggies of crack cocaine from him. At the time, Jones was at his home and he had the requested crack cocaine on-hand. Jones lived at 4119 W. 21st Street in a second floor apartment with his grandmother, Virginia Jones. The building is a two-flat owned by his great-grandfather, Tommie Jones. Tommie Jones lived on the first floor of the building.

After the telephone call, Jones took two baggies of cocaine and a gun, exited his home, got into his white car, and drove to the 2200 block of South Keeler. Jones parked his white car on Keeler near the alley between Keeler and Cermak. Then, Jones walked to his blue car, which was parked in the nearby alley or adjacent vacant

lot. According to Jones, he went to the blue car to stash his gun before proceeding to meet Dan. Shortly after Jones reached the blue car, three police officers pulled into the alley in an unmarked squad car and approached him. At that time, Jones claims he was outside the blue car, looking under its hood.

According to Jones, one of the officers told him to put his hands up and then searched him. The officer recovered a gun from Jones' right side waistband. The officer also searched Jones' pockets and found cigarettes, a cell phone, and approximately $139 in United States currency. When the officers handcuffed Jones, he released the two baggies of cocaine that were in his hand. Then, the officers placed him in the back of their unmarked squad car. While Jones was handcuffed in the squad car, he managed to use his cell phone to call his girlfriend at the time, Waukena Williams, and asked her to come to the alley. Ms. Williams arrived at the alley a short time later, while Jones and the police officers were still there. According to Jones, there were no drugs behind the driver's side front tire of the blue car. At the suppression hearing, Jones claimed the officers lacked reasonable suspicion to conduct an investigatory detention of him under *Terry v. Ohio*, 392 U.S. 1, 22-27 (1968).

The arresting officers' testimony at the suppression hearing differed substantially from Jones' testimony. One of the arresting officers, John Tanaka ("Tanaka"), testified that he observed Jones conducting what, based on his experience, he believed to be two hand-to-hand drug transactions. According to Tanaka, while using his field binoculars, he observed Jones standing on Keeler, near the alley. He then observed an unknown black male approach Jones, engage in a brief conversation, and tender to Jones what appeared to be United States currency. Then, Jones walked towards the

3

blue car in the alley, reached down behind the front driver's side tire, and retrieved a small item. Jones walked back to the unknown black male and gave him that item. A few minutes later a second individual approached Jones, engaged in a conversation, and handed Jones what appeared to be United States currency. Again, Jones walked toward the blue car, retrieved a small item from behind the front driver's side tire, walked back to the individual, and gave him the item.

Tanaka testified that he believed he had observed two drug transactions involving Jones, so shortly thereafter, he and two other officers approached Jones. According to Tanaka, when he approached Jones, Jones was seated in the blue car and the hood of the car was down. Tanaka ordered Jones out of the blue car and another officer recovered three baggies of crack cocaine from behind the front tire of the car. After the officers recovered the drugs, they placed Jones under arrest, searched him and found a gun in his waistband.

Counts IV, V and VI stem from a search of Jones' bedroom after his arrest. After the officers arrested Jones in the alley, they called a marked squad car to come to the alley, pick-up Jones, and transport him to the police station. Then Tanaka and the other two officers went to Jones' home, without a warrant, and searched his bedroom. In his bedroom, the officers seized eight additional guns, approximately 11 grams of crack cocaine, two bullet-proof vests, and other drug paraphernalia.

Both parties agreed that the suppression hearing boiled down to a credibility determination between Jones and the arresting officers. Jones claimed that he had not engaged in any hand-to-hand drug transactions and that the officers had no basis to approach him in the alley. The officers testified that they had both reasonable

4

suspicion and probable cause to approach and search Jones. Magistrate Judge Levin found the officers' testimony credible and Jones' testimony not credible. Magistrate Judge Levin found that the officers had reasonable suspicion sufficient to justify a *Terry* stop, that the drugs recovered from the alley were in a public area, and that once the officers found the drugs, they had sufficient cause to arrest Jones. Magistrate Judge Levin further found reasonable consent to search Jones' bedroom, but did not elaborate on the basis for that decision. Accordingly, Magistrate Judge Levin recommended the denial of Jones' motion to suppress. Neither side filed objections to the recommendation, so this Court adopted the unopposed recommendation and denied the motion to suppress.

### B. Evidentiary Hearing

At the evidentiary hearing before this Court on the instant motion, Jeffrey Granich, Jones' trial counsel ("Granich" or "trial counsel"), testified regarding his decision not to specifically contest the validity of the consent to search Jones' bedroom. Granich was a knowledgeable and credible witness. He testified that the decision not to contest the validity of the consent to search was strategic. After speaking with Virginia and Tommie Jones, Granich was convinced that if he called either person to testify at a suppression hearing on the consent issue, both witnesses would admit that they willing gave the police officers oral and written consent to search the second floor apartment at 4119 W. 21st Street.

After talking to Virginia and Tommie Jones, Granich believed that they would not be reliable witnesses, that they would find cross-examination very difficult, and that they

5

would be easily confused.[1] In Granich's professional judgment, he believed the validity of the consent to search the bedroom - namely whether Virginia and/or Tommie Jones has actual or apparent authority to consent - was a fact intensive inquiry.

Granich also testified that his case strategy was to attack the validity of the initial search of Jones and to exclude all the evidence in the case based on a "fruit of the poisonous" tree argument. Granich believed that the best defense strategy for his client was to focus on contesting the initial search of Jones.

### C. Change of Plea

At the change of plea hearing, this Court asked Jones if he was satisfied with his trial counsel's advice and efforts on his behalf. Jones responded "yes, absolutely." He also indicated that he had enough time to talk to Granich, that he understood the charges against him, that no one made any promises or threats to cause him to plead guilty, that no one forced him to plead guilty, and that his decision to plead guilty was entirely voluntary. Jones also admitted to all the elements of the charged offenses and stated that he understood the maximum penalties for each of the six counts in the superseding indictment. Importantly, Jones understood that the maximum penalty for a conviction on Count I was twenty years imprisonment followed by up to three years of supervised release. The minimum penalty for a conviction on Count II was five years imprisonment. The maximum penalty on Count II was life imprisonment followed by up to five years of supervised release. Jones also understood that a conviction on Count II

---

[1] Granich's instinct as to Tommie Jones proved correct. Tommie Jones testified at the suppression hearing before Magistrate Judge Levin. The Magistrate found Tommie Jones to be honest, but noted that his testimony appeared confused and unreliable due to his age and other factors.

carried a mandatory, consecutive sentence to any sentence imposed for convictions under Counts I, III, IV, V, or VI.

Jones admitted to possessing the relevant crack cocaine, to having an intent to distribute the crack cocaine, and to possessing nine guns. Jones also affirmatively told the Court that he did not dispute any of the facts relevant to the elements of the charged crimes discussed on the record at the change of plea hearing. The plea colloquy complied with all the requirements of Federal Rule of Criminal Procedure ("Rule") 11(b)(1)-(3) and Jones' statements during the plea colloquy are presumed truthful. *See U.S. v. Standiford*, 148 F.3d 864, 868-69 (7th Cir. 1998). At sentencing, Jones reiterated that he was satisfied with the representation Granich provided him and that he was sorry for his actions and disrespect for the law.

### D. Sentencing

Prior to sentencing, the Court received a Presentence Investigation Report ("PSR") recommending that the Court assign Jones a criminal history category III and total offense level 30, resulting in a recommended advisory sentencing guideline range of 121 to 151 months of incarceration for Jones' guilty plea to Counts I, III, IV, V, and VI of the superseding indictment. The PSR recommended sentencing Jones to a mandatory five year consecutive sentence for his conviction under Count II. Both Jones and the government filed objections to the recommendations within the PSR. Among other things, the government objected to the recommendation in the PSR that Jones receive a two-level reduction to his offense level for acceptance of responsibility under § 3E1.1(a) of the United States Sentencing Commission Guidelines Manual ("Manual"). Jones objected to the recommended application of a §3C1.1 two-level enhancement for

7

obstruction of justice in the PSR.

The Court sustained Jones' objection to the §3C1.1 enhancement and denied the government's objection to the two-point reduction in the offense level under §3E1.1(a). Ultimately, the Court assigned Jones a criminal history category III and total offense level 28, resulting in a recommended advisory sentencing guideline range of 97 to 121 months. The Court found that a sentence of no more than 121 months, given the mandatory 5 year consecutive term of imprisonment the Court was required to impose based on Jones' guilty plea to Count II, was reasonable and merited under the facts of the case. On March 22, 2006, the Court sentenced Jones to 181 months incarceration, followed by a 3 year term of supervised release. The Court's sentence was well under the maximum possible penalties for either Count I - twenty years imprisonment - or Count II - life imprisonment. Based on all relevant facts available to the Court at the time of sentencing, it found that 181 months imprisonment, followed by a 3 year term of supervised release was a reasonable and appropriate sentence.

## II. Legal Analysis

Jones seeks to vacate his guilty plea and sentence, arguing that they were obtained in violation of the Fourth and Sixth Amendments to the Constitution of the United States because his trial counsel was ineffective. Jones claims that his trial counsel was ineffective in the following four ways: (1) he failed to object to Magistrate Judge Levin's report and recommendation to deny the motion to suppress; (2) he failed to negotiate a conditional plea under Rule 11(a)(2); (3) he failed to file a motion to suppress evidence seized from Jones' bedroom; and (4) he failed to file a notice of appeal.

Jones claims that his trial counsel's ineffective assistance rendered his guilty plea involuntary. A petitioner challenging the voluntariness of his plea bears the heavy burden of persuading the Court that his plea was not voluntary. *Marx v. U.S.*, 930 F.2d 1246, 1250 (7th Cir. 1991). Jones contends that his plea was involuntary based on events outside the scope of the record, namely, Granich's failure to advise him of the consequences of the Magistrate Judge's report and recommendation and the blind plea. There is no question that the four corners of the record reflect a knowing and voluntary plea.

In order to prevail on an ineffective assistance of counsel claim, a petitioner must establish that his counsel's performance was deficient, and that, but for the deficient performance, the outcome would have been different; i.e. that he was prejudiced. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). To satisfy his burden under *Strickland*, Jones must demonstrate both that (1) trial counsel's actions were "beyond the realm of reasonable professional judgment within the context of the case, at the time [trial counsel] acted," and (2) trial counsel's "ineffectiveness prejudiced him, rendering the proceedings fundamentally unfair and the result unreliable." *Manson v. Hanks*, 97 F.3d 887, 892-93 (7th Cir. 1996). In short, Jones must demonstrate that his trial counsel made "errors so serious that counsel was not functioning as 'counsel' guaranteed the defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687. Jones must demonstrate that his trial counsel's performance was objectively unreasonable and that but for trial counsel's errors, he would not have pled guilty and would have gone to trial. *Hays v. United States*, 397 F.3d 564 (7th Cir. 2005). Jones

bears a heavy burden because counsel is presumed effective. *Shell v. U.S.*, 448 F.3d 951, 955 (7th Cir. 2006). To make such a showing, petitioner must present objective evidence that he would not have entered a guilty plea; his own self-serving testimony is not enough. *Berkey v. U.S.*, 318 F.3d 768, 772-73 (7th Cir. 2003); *McCleese v. U.S.*, 75 F.3d 1174, 1179 (7th Cir. 1996).

### A. Claim I - Failure to Negotiate a Conditional Plea

It is undisputed that Granich did not negotiate a conditional plea for Jones under Rule 11. Jones argues that his counsel's failure to inform him about the possibility of entering into a conditional plea deprived him of the ability to make an informed decision about whether to proceed to trial or plead guilty. However, Jones has not and cannot establish prejudice. First, Jones did not have a right to enter a conditional guilty plea. Second, Jones has not alleged how the mere failure to negotiate a conditional plea affected the outcome in his criminal case. Third, in his affidavit in support of his §2255 petition, Jones did not affirmatively state that he would not have plead guilty if he had known entering such a plea waived his right to appeal the ruling on the motion to suppress.

Most importantly, even if trial counsel had informed Jones about the possibility of a conditional plea, secured such a plea, and reserved Jones' right to appeal the denial of his motion to suppress, Jones' chance of success on the appeal of the denial of his motion to suppress was virtually non-existent. *See U.S. v. Elizalde-Adame*, 2002 WL 1308639 (N.D. Ill. 2002). The suppression hearing boiled down to a credibility determination. The denial of a motion to suppress is reviewed under the deferential

clearly erroneous standard. *U.S. v. Eddy*, 8 F.3d 577, 580 (7th Cir. 1993). An appellate court must accept a trial court's credibility determinations unless they are contrary to the laws of nature, or are so inconsistent or improbable on their face that no reasonable fact finder could accept them. *Id*. Jones cannot meet that burden and thus was not prejudiced by trial counsel's failure to negotiate a conditional plea. The Magistrate Judge's finding that there was reasonable suspicion to stop Jones and probable cause to arrest and search him was reasonable.

Notably, Jones failed to cite a single case where a court granted a § 2255 petition on the basis that a defendant was prejudiced because his trial counsel failed to inform him that a guilty plea constituted a waiver of his right to appeal a ruling on a motion to suppress. In his briefing, Jones relies heavily on *Hays v. U.S.*, in support of his argument that his guilty plea was involuntary. *Hays v. U.S.*, 397 F.3d 564 (7th Cir. 2005). However, the Court in *Hays* found the defendant's plea voluntary. Further, *Hays* involves claims by the defendant that he did not understand the true nature of the charges against him at the time he entered a guilty plea. In the instant case, Jones never argued that he was unclear about the true nature of the charges against him. In fact, Jones admitted to the required elements for all six counts of conviction and never disputed that he committed the relevant crimes.

### B. Claim II - Failure to Object to the Report and Recommendation

Next, the Court turns to Jones' claim that his trial counsel was ineffective for failing to object to Magistrate Judge Levin's report and recommendation. This claim fails for the same reason as the previous claim - Jones cannot demonstrate prejudice.

11

Failure to file objections with the district court to a Magistrate Judge's report and recommendation within 10 days of its issuance, waives the party's right to appeal all issues therein to both the district and appellate courts. *United States v. Hall*, 462 F.3d 684 (7th Cir. 2006). The government does not contest that trial counsel's failure to object to the report and recommendation and the resulting waiver of Jones' right to appeal that issue was objectively unreasonable. However, Jones has failed to argue or present any facts to support a finding that he was prejudiced by the failure to object. Further, even if Jones had preserved his right to appeal the denial of his motion to suppress, as discussed above, his chances of prevailing on an appeal of a credibility determination were virtually non-existent. *See Kitchen v. U.S.*, 227 F.3d 1014, 1020-21 (7th Cir. 2000) (holding that if an appeal would not likely have resulted in reversal, defendant has not demonstrated prejudice, and his ineffective assistance of counsel claim fails).

### C. Claim III - Failure to Move to Suppress Evidence Seized from Jones' Bedroom

Jones' third ineffective assistance of counsel claim stems from trial counsel's decision not to contest the validity of the consent to search Jones' bedroom. Without any citations to applicable case law, Jones argues that his trial counsel's conduct was objectively unreasonable and amounted to deficient performance. On February 11, 2009, the Court held a limited evidentiary hearing to determine the reasons behind Granich's decision not to contest the consent to search the bedroom.[2]

---

[2] Jones requested an evidentiary hearing on all four alleged claims of ineffective assistance of counsel. As the Court stated on the record prior to the beginning of the

As stated above, Granich was a reliable and credible witness. He was very knowledgeable about Jones' case and stated that he spoke with Jones and his relatives - Virginia and Tommie Jones - numerous times while formulating a trial strategy for the underlying criminal case. The Court finds that Granich's decision not to contest the validity of the consent to search Jones' bedroom was well within the realm of professional judgment and does not constitute ineffective assistance of counsel.[3] Because Granich exercised sound professional judgment in deciding not to contest the validity of the consent to search the bedroom, Claim III of Jones' ineffective assistance of counsel motion is denied.

### D. Claim IV - Failure to File a Notice of Appeal

The Court addresses Jones' fourth claim of ineffective assistance of counsel. Despite Jones' request that he do so, Granich failed to file a notice of appeal on Jones' behalf to the Seventh Circuit Court of Appeals. The government concedes that trial counsel's failure to appeal was *per se* ineffective. *See U.S. v. Nagib*, 56 F.3d 798, 801

---

evidentiary hearing, Jones was not automatically entitled to an evidentiary hearing. An evidentiary hearing is not necessary where it is clear petitioner is not entitled to relief, or where petitioner's allegations are vague, conclusory, or palpably incredible. *Bruce v. U.S.*, 256 F.3d 592, 597 (7th Cir. 2001). As stated above, as a a matter of law, Jones could not prevail on his claim related to the failure to secure a conditional plea and the failure to object to the report and recommendation. Therefore, a hearing as to those claims was not necessary. An evidentiary hearing is only necessary as to issues where the allegations, if proven, would entitle petitioner to relief. *Bruce,* 256 F.3d at 597. The only claim that fell into that category was the one related to the validity of the consent to reach Jones' bedroom. Therefore, the hearing was limited to that issue.

[3]At the evidentiary hearing, defendant requested leave to call a retained lawyer to testify as a legal expert. Defense counsel proffered that the witness would testify that failure to contest the validity of the consent did not fall within the realm of professional judgment. This Court is more than qualified to determine whether Granich's actions fell within the realm of professional judgment and expert testimony on that issue was not necessary.

(7th Cir. 1995). Accordingly, prejudice is presumed. *Id*. As a remedy, the government proposes that the Court vacate the judgment and issue a new, identical judgment that would re-start the 10-day period for Jones to file a notice of appeal with the Seventh Circuit Court of Appeals. Jones does not object to this remedy, but claims that vacating the judgment alone is not sufficient relief in light of trial counsel's other alleged errors.

### E. Cumulative Effects Argument

Jones also appears to make a cumulative ineffective assistance of counsel claim. In essence, Jones argues that even if the court finds that Jones was not prejudiced by Granich's isolated acts of deficient performance, Granich's performance as a whole was so deficient that he was not functioning as counsel guaranteed to the defendant by the Sixth Amendment and *Strickland*, 466 U.S. at 687. Because Jones did not have competent counsel at the time he plead guilty, he argues his plea was involuntary and should be vacated. The cumulative effects argument is not persuasive. As stated above, Jones was not prejudiced by Granich's decisions not to secure a conditional plea under Rule 11, not to object to the report and recommendation, and not to contest the validity of the consent to search Jones' bedroom.

After listening to Granich's testimony at the evidentiary hearing, the Court is convinced he provided Jones with more than adequate representation in the underlying criminal case. Granich had a well reasoned defense strategy, which was to vigorously contest the initial search of Jones in the alley and suppress all the evidence in the case. If that strategy did not succeed, Granich hoped to limit Jones' sentence by negotiating a timely plea agreement.

Although Granich's representation in the underlying criminal case was more than adequate through the time of sentencing, Jones was prejudiced by Granich's failure to file a direct appeal. However, that error had no impact on Jones' decision to enter a guilty plea and cannot serve as grounds to vacate the guilty plea.

### *III. Conclusion*

In summary, Jones' §2255 petition is granted in part and denied in part. The petition is granted as to Jones' claim that his trial counsel was ineffective for ignoring his request to file a direct appeal to the Seventh Circuit Court of Appeals. To remedy that error, the Court will vacate the judgment it entered on March 22, 2006 and re-enter the judgment. The petition is denied as to Jones' claims that his trial counsel was ineffective for failing to secure a conditional plea under Rule 11 and failing to appeal Magistrate Judge Levin's report and recommendation. The petition is also denied as to Jones' claim that his trial counsel was ineffective for deciding not to specifically contest the validity of the consent to search his bedroom.

ORDERED: The motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence by a person in federal custody [1] is granted in part and denied in part. Status hearing is set for February 24, 2009 at 11:15 a.m. Unless there is an objection from one of the parties, on February 24, 2009, the Court will vacate the judgment and re-enter an identical judgment in the underlying criminal case, *USA v. Jones*, 05 CR 45.

Jones will have ten days from February 24, 2009 to appeal the judgment in 05 CR 45.

E N T E R:

George W. Lindberg  
SENIOR U.S. DISTRICT JUDGE

DATED: February 18, 2009